| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:12-CV-236-RLM |
| | ) | (ARISING OUT OF 3:09-CR-88-RLM) |
| JERMEL C. THOMAS | ) | |

OPINION and ORDER

Jermel Thomas pleaded guilty to a one-count indictment charging him under 18 U.S.C. § 922(g)(1) with being a felon in possession of a firearm. On October 21, 2010, Mr. Thomas was sentenced to 120 months' imprisonment followed by three years of supervised release. The court of appeals dismissed Mr. Thomas's direct appeal. United States v. Thomas, 639 F.3d 786 (7th Cir. 2011). Mr. Thomas's attorney at the time, William J. Stevens, filed a motion pursuant to 28 U.S.C. § 2255 asking that Mr. Thomas's sentence be vacated, set aside, or corrected. Mr. Thomas himself later supplemented that motion. A letter from Mr. Thomas to the court indicated William Stevens was no longer his attorney, but he wanted the two § 2255 motions to be combined. William Stevens acknowledged that his representation was ineffective as to one specific mistake, but he asked the court to allow his representation to continue until such time as he was required to testify in the matter. While William Stevens's interest in righting past wrongs and providing *pro bono* representation to straighten out the matter was appreciated, the court also had an interest in seeing any of Mr. Thomas's legitimate claims fully litigated. The court interpreted Mr. Thomas's letter as a request for appointment of counsel and

held the interests of justice required different representation. Mr. Thomas's new counsel, Philip Skodinski, subsequently filed a § 2255 motion that consolidated the viable claims from the two prior motions. The government filed its response and Mr. Thomas his reply.

In his plea agreement, Mr. Thomas waived his right to appeal his conviction and sentence and the manner in which his conviction and sentence were determined or imposed, but this waiver didn't include a § 2255 claim of ineffective assistance of counsel directly related to the waiver of his appeal rights or the waiver's negotiation. A § 2255 waiver doesn't apply to a defendant's claim that he received ineffective assistance of counsel in negotiating the waiver or that the waiver wasn't knowingly and voluntarily made. *See* Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999). Mr. Thomas's § 2255 motion is based on claims that the performances of his attorneys were deficient for a variety of reasons; the court addresses the claims against Jay Stevens and William Stevens separately.

I. Arraignment Through Guilty Plea

Mr. Thomas claims his first counsel, Jay Stevens, was ineffective because he: (1) had a conflict of interest; (2) offered Mr. Thomas poor sentencing estimates; (3) didn't advise Mr. Thomas of a plea offer made before November 2009; (4) didn't interview witnesses that could exculpate Mr. Thomas; and (5)

didn't disclose exculpatory evidence to Mr. Thomas. Jay Stevens represented Mr. Thomas from his arraignment until shortly after his guilty plea.

To prevail on an ineffective assistance of counsel claim, a defendant must (1) demonstrate that counsel's performance fell below objective standards of reasonableness, and (2) show that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Yu Tian Li v. United States, 648 F.3d 524, 527 (7th Cir. 2011). "In order to establish prejudice, [Mr. Thomas] must show that there is a reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different." Yu Tian Li v. United States, 648 F.3d 524, 527 (7th Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). Until the defendant satisfies the two-pronged test, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Mr. Thomas signed the § 2255 motion that he personally filed with the court, declaring under penalty of perjury that the allegations were true and correct. Those allegations are therefore evidence, and the court can evaluate the allegations and decide whether a sufficient threshold showing has been made to warrant further proceedings. Kafo v. United States, 467 F.3d 1063, 1068 (7th Cir. 2006).

*A. Conflict of Interest*

Mr. Thomas argues that his plea agreement should be void because, as a result of his attorney's conflict of interest, he didn't knowingly or intelligently make that plea. Similarly, Mr. Thomas argues the waiver of his appellate rights in his guilty plea wasn't knowingly and intelligently made as a result of the conflict of interest. "A criminal defendant is entitled to counsel whose undivided loyalties lie with the client." United States v. Barnes, 909 F.2d 1059, 1065 (7th Cir. 1990). Consequently, a defendant can cite his attorney's conflict of interest in support of an ineffective counsel claim. Stoia v. United States, 22 F.3d 766, 770 (7th Cir. 1994). An ineffective assistance of counsel claim based on counsel's conflict of interest can be asserted either under the standard of Strickland v. Washington, 466 U.S. 668 (1984), under which the defendant must show that his attorney had a potential conflict of interest that prejudiced his defense, or under the standard of Cuyler v. Sullivan, 446 U.S. 335 (1980), which requires a defendant to show that his attorney had an actual conflict of interest that adversely affected the lawyer's performance. Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). The Cuyler v. Sullivan burden is lighter because the defendant doesn't have to demonstrate the prejudice required by the second prong of the Strickland standard. Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). Prejudice is presumed if the Cuyler v. Sullivan standard is met. United States v. Wallace, 276 F.3d 360, 367 (7th Cir. 2002).

Under Cuyler v. Sullivan, the defendant "must demonstrate [1] that an actual conflict of interest [2] adversely affected his lawyer's performance."

Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). An actual conflict of interest "affected counsel's performance – as opposed to a mere theoretical division of loyalties," Taylor v. Grounds, 721 F.3d 809, 818 (7th Cir. 2013) (quoting Mickens v. Taylor, 535 U.S. 162, 171 (2002)), and counsel had to choose "between advancing his own interests above those of his client." Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). The defendant must show the actual conflict of interest influenced the attorney to make "'basic strategic decisions' in a manner adverse to the defendant." Taylor v. Grounds, 721 F.3d at 819. In other words, the defendant must demonstrate a link or causal connection between the actual conflict of interest and the adverse effect on counsel's representation contrary to the defendant's interests – i.e., the ineffective assistance of counsel. Gray-Bey v. United States, 156 F.3d 733, 740 (7th Cir. 1998). In the context of a defendant who pleaded guilty upon the advice of an attorney with a conflict of interest, the focus of the adverse effect is whether the conflict of interest affected counsel's actions and the defendant's decision to plead guilty. Hall v. United States, 371 F.3d at 974.

Jay Stevens represented Mr. Thomas when he entered his guilty plea on March 22, 2010. Jay Stevens and attorney Robert Truitt shared the division's Federal Community Defender office space and staff, and Mr. Truitt represented Lawrence Davis. Mr. Thomas contends that Mr. Davis shot him, was directly involved in this case, and was also cooperating with the government and

providing information. This scenario, Mr. Thomas argues, created an inherent conflict of interest that should void the plea.

Forty-two days after Mr. Thomas entered his guilty plea, on May 3, 2010, Jay Stevens filed a motion to withdraw as counsel stating that he had "just learned" of the conflict of interest between Mr. Thomas and another client of the Federal Community Defender's Office, presumably Mr. Davis. (Doc. No. 34). At the subsequent hearing on the motion, Jay Stevens told the court:

> [W]e represent two individuals in my office, and some information has come to light which could provide benefit to one at the expense of another. We only know about the fact that the information would be of benefit to one through attorney communications, and we only know that it would be a detriment to the other through attorney-client communications with the other, and so that puts us in a conflict situation where we would have to violate attorney-client communications in either event in order to zealously represent each individual.

(Doc. No. 74). A conflict of interest developed, but Mr. Thomas hasn't alleged or pointed to facts that indicate Jay Stevens acted against Mr. Thomas's interests due to the conflict or, indeed, did anything other than move to withdraw when he learned of the potential conflict. Mr. Thomas was present at the hearing and confirmed that he understood the issue discussed at the hearing and didn't have any problem with Jay Stevens's motion to withdraw. The court told Mr. Thomas that he would be appointed a different attorney who could represent him adequately, even if that required rescheduling the sentencing hearing. The court granted the motion, and substitute counsel was appointed later that day. Mr. Thomas hasn't set forth facts that met the <u>Cuyler v. Sullivan</u> standard

because nothing suggests that the conflict of interest adversely affected his lawyer's performance on his behalf or his decision to plead guilty. Hall v. United States, 371 F.3d at 974 (adverse effect is a reasonable likelihood that counsel's performance would have been different had there been no conflict of interest).

A defendant that can't meet the Cuyler v. Sullivan standard can nonetheless demonstrate ineffective assistance of counsel under the Strickland standard by demonstrating that (1) his counsel had a potential conflict of interest (2) that prejudiced his defense. Hall v. United States, 371 F.3d at 973. In the plea negotiation context, "[t]o show prejudice, [the defendant] would have to establish that, but for the conflict, he would not have pleaded guilty." Phillips v. United States, 668 F.3d 433, 436 (7th Cir. 2012). Mr. Thomas hasn't alleged that he wouldn't have pleaded guilty if the conflict hadn't developed. A strong presumption exists that counsel gave adequate assistance and "made significant decisions in the exercise of his or her reasonable professional judgment." Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). The court presumes "counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." Id. So the court presumes that Jay Stevens moved to withdraw as counsel when he learned of the conflict, as he stated in his motion and at the related hearing. Before that time, when Jay Stevens was unaware of the conflict, the conflict couldn't affect his decisions or advice. His representation of Mr. Thomas wasn't tainted by the

conflict, including the time during which Mr. Thomas pleaded guilty and waived his appellate rights. Mr. Thomas has alleged neither an adverse effect, required to meet the Cuyler v. Sullivan standard, nor prejudice, required to meet the Strickland standard, as a result of the conflict of interest.

*B. Sentencing Predictions*

Mr. Thomas next says he received ineffective assistance because his attorney's prediction of the sentence he would get if he pleaded guilty wasn't accurate. To establish a claim for ineffective assistance of counsel in the context of a guilty plea, Mr. Thomas must show (1) that his attorney's performance fell below objective standards of reasonableness; and (2) that there is a reasonable probability that, but for his attorney's errors, he wouldn't have pleaded guilty and would have insisted on going to trial. Bethel v. United States, 458 F.3d 711, 716 (7th Cir. 2006). When the government makes a plea offer, a reasonably competent attorney will try to learn the facts of the case, make an estimate of a likely sentence, and communicate that analysis to the defendant. United States v. Barnes, 83 F.3d 934, 939 (7th Cir. 1996). The attorney's analysis needn't provide a precisely accurate prediction of the sentencing consequences of a guilty plea, but the scrutiny must be undertaken and the advice must be given in good faith. Id. at 939-940. "[T]he sentencing consequences of guilty pleas . . . are extraordinarily difficult to predict." Id. at 940.

Mr. Thomas claims Jay Stevens told him that he would get a 77-month sentence, the low end of a 77-96 month range, but he was sentenced to 120 months' imprisonment. In paragraph 9(c) of his plea agreement, Mr. Thomas acknowledged that he understood the charge to which he was pleading guilty, a violation of 18 U.S.C. § 922(g)(1), carried a maximum term of ten years' imprisonment (Doc. No. 31), and during the plea colloquy, the court confirmed that Mr. Thomas was aware of this term:

> The Court: First of all, as I understand it from this paper, you're aware that Congress has said that people who commit this crime can be sent to prison for as long as ten years . . . .
> Is that how you understood that?

> Mr. Thomas: Yes, sir.

(Doc. No. 75). In paragraph 9(e) of his plea agreement, Mr. Thomas acknowledged that the sentencing guidelines are advisory and that the judge would determine the sentence after considering the pre-sentence investigation report, input from Mr. Thomas's counsel and the government, federal sentencing statutes, and the sentencing guidelines. (Doc. No. 31). During the plea colloquy, the court confirmed that Mr. Thomas was aware of the advisory nature of the sentencing guidelines:

> The Court: Now, the Sentencing Guidelines are going to play a part in the sentencing decision in this case. I'm going to have -- they're going to make me answer a series of questions. And once I've answered those questions, the Guidelines will recommend a sentencing range that will be a lot narrower than that zero to ten years that Congress allows.
> I don't have to pick a sentence that the Guidelines recommend. I have to pick a reasonable a sentence, and there's a statute that tries to help us understand what they mean by a

reasonable sentence. But when I start looking for a reasonable sentence, I'm going to look, first, in that range that the Guidelines recommend. If I find a reasonable sentence there, fine. If not, I can look outside the range. I can look below it or above it, though not more than ten years. So, in the end, I can pick any reasonable sentence that I find from zero to ten years, but I'll start looking at what the Guidelines recommend.

Is that how you understand it?

Mr. Thomas: Yes, sir.

(Doc. No. 75). In paragraph 9(f) of the plea agreement, Mr. Thomas acknowledged that no one could predict the precise sentence that would be imposed and that the court had the authority to impose any sentence within the statutory maximum of ten years. (Doc. No. 31). During the plea colloquy, the court confirmed that Mr. Thomas was aware that nobody can guarantee how the court will answer the guideline questions:

The Court: Am I correct that you and Mr. [Jay] Stevens have looked over the Guidelines and tried to get a feel as to how they might play out in your case?

Mr. Thomas: Yes, sir.

The Court: And I assume Mr. Maciejczyk has looked the Guidelines over for the Government, as well, with the same idea.

The attorneys know, and I want to be sure that you know, that no one can say for sure how I'm going to answer these questions, including me, because I haven't tried to do it, so my answers to the questions may be exactly what someone expects or they might be different from what someone expects, maybe very different, but neither side has the right to withdraw from the plea agreement just because I didn't answer the questions the way they thought I would.

Is that how you understand that?

Mr. Thomas: Yes, sir.

(Doc. No. 75). Mr. Thomas acknowledged, both in his signed plea agreement and under oath during the plea colloquy, that a ten-year term of imprisonment was a possible sentence and that he was aware of the many factors that might affect his sentence. *See* <u>United States v. Martinez</u>, 169 F.3d 1049, 1054 (7th Cir. 1999) ("the record of a Rule 11 proceeding is entitled to a 'presumption of verity' . . . and the answers contained therein are binding."). "Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art." <u>United States v. Barnes</u>, 83 F.3d at 940. Consequently, an attorney's mistaken sentence prediction is not enough in itself to show deficient performance. <u>Id</u>. at 940.

Mr. Thomas also claims that Jay Stevens told him that his firing a gun during the incident wouldn't be a sentencing issue, but he received additional levels for shooting the gun and for obstruction of justice when he denied shooting the gun. The incident that led to Mr. Thomas's charges involved a confrontation. Officers found Mr. Thomas at the scene with bullet wounds in both legs and a Taurus Model 605 .357 magnum revolver and two live cartridges in the cylinder a short distance away. Ronald Payne was also shot during the incident. Testimony at the sentencing hearing from four people, including Mr. Thomas and Mr. Payne offered several different versions of the incident. In paragraph 9(b) of the plea agreement, Mr. Thomas agreed with the following facts: "After [my prior felony] convictions, on May 12, 2009 in

Michigan City, Indiana, I knowingly possessed a silver Taurus Model 605 .357 magnum 5 shot revolver serial number VE11240 and 2 live .357 magnum Winchester cartridges." (Doc. No. 31). In his testimony at the sentencing hearing, Mr. Thomas conceded that he had the gun during the incident, but claimed that he didn't fire the gun and someone else shot Mr. Payne.

Mr. Thomas received a four-level enhancement at sentencing because the court found it was more likely than not that Mr. Thomas committed battery by means of a deadly weapon, a felony under Indiana Code § 35-42-2-1(a)(3)[1], and criminal recklessness while armed with a deadly weapon, a felony under Indiana Code § 35-42-2-2(c)(2)(A)[2], in connection with his possession of the firearm. *See* U.S.S.G. § 2K2.1(b)(6). The plea agreement included a non-binding agreement from the government to recommend level reductions for acceptance of responsibility, contingent upon Mr. Thomas continuing to accept responsibility. After Mr. Thomas testified at the sentencing hearing and upon the government's request, the court held that Mr. Thomas had disqualified himself from an acceptance of responsibility finding. The court found that by admitting to possessing the gun "for a second" but denying everything else, Mr.

---

[1] The sentencing memorandum mistakenly cites IND. CODE § 35-43-3-2(a)(3) for battery with a deadly weapon; under IND. CODE § 35-42-2-1(a)(3), a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. (2013).

[2] Under IND. CODE § 35-42-2-2(c)(2)(A), the offense of criminal recklessness - a person who recklessly, knowingly, or intentionally performs either an act that creates a substantial risk of bodily injury to another person or hazing - is a Class D felony if it is committed while armed with a deadly weapon. (2013).

Thomas engaged in the sort of false minimizing of culpability that is inconsistent with a finding of acceptance of responsibility. Mr. Thomas could have received up to a three-level reduction for acceptance of responsibility. Further, the government sought and the court granted an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The court found that when Mr. Thomas denied shooting Mr. Payne, he knowingly gave false testimony on a fact material to the sentencing issues before the court. The enhancement increased the offense level by two levels.

"A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency." United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996) (attorney's failure to inform defendant he would be classified as a career offender was not a constitutional violation when nothing in the record indicated counsel didn't undertake a good faith investigation); *see also* United States v. Teller, 762 F.2d 569, 577 (7th Cir. 1985) (attorney's failure to recognize or advise the defendant on issues of federal and state jurisdiction that impacted the severity of the defendant's punishment was not ineffective assistance of counsel). "To rise to a constitutional violation, there must be . . . evidence . . . of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client." United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999). The principal reason for any difference between a pre-plea agreement sentence estimate and the actual sentence imposed was

Mr. Thomas's testimony at the sentencing hearing and not a lack of good-faith effort on the part of counsel. Before the plea agreement was signed, when Jay Stevens presumably advised Mr. Thomas of the possible sentencing outcomes, Jay Stevens couldn't have predicted that Mr. Thomas would try to minimize his culpability and testify falsely at the sentencing hearing resulting in the loss of acceptance of responsibility reductions and the addition of an obstruction of justice enhancement. Mr. Thomas hasn't alleged that Jay Stevens didn't try to learn the facts of the case or make a good faith estimate of a likely sentence. United States v. Cieslowski, 410 F.3d 353, 358-359 (7th Cir. 2005).

Even if counsel's advice about the sentencing range was unreasonable, Mr. Thomas hasn't shown that without that advice, he would have insisted on going to trial instead of pleading guilty. Bethel v. United States, 458 F.3d 711, 718 (7th Cir. 2006). In the § 2255 motion that he filed personally, Mr. Thomas conveys that he later regretted pleading guilty:

> The only thing I ever agreed to take responsibility for was the 922(g)(1) Felon in Possession. I even attempted to tell Judge Miller that at my sentencing . . . . From the beginning of this case, all the way up until I pled guilty, I wanted to go to trial. I even second guessed my pleading guilty at sentencing when the judge have [sic] to ask me twice about the shooting of the gun.

Second guessing or regretting his decision to plead guilty at the sentencing hearing doesn't trigger a hearing to see if his attorney's allegedly erroneous sentence predictions were the reason Mr. Thomas chose to plead guilty. After the enhancements and loss of acceptance of responsibility, the advisory guideline range was 151 to 188 months' imprisonment, but the court

sentenced Mr. Thomas to 120 months, the statutory maximum for the charge. Mr. Thomas acknowledged in his plea agreement and under oath during the plea colloquy that he knew the statutory maximum penalty and that no one, including his attorney, could guarantee a particular sentence. Mr. Thomas hasn't presented any evidence that he was prejudiced by his attorney's allegedly unreasonable sentencing predictions.

### C. Withheld Plea Agreement

Mr. Thomas claims his attorney didn't advise him of a plea offer made before November 2009. As a general rule, defense counsel has a duty to communicate formal plea offers to the defendant. Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). If counsel doesn't tell his client about a plea offer, counsel's representation is deficient. Overstreet v. Wilson, 686 F.3d 404, 406 (7th Cir. 2012) (citing Missouri v. Frye, 132 S. Ct. 1399, 1408-1410 (2012)). In the context of a plea offer that has lapsed because of counsel's deficient performance, to establish prejudice the defendant must demonstrate a reasonable probability that several things would have happened: (1) the defendant would have accepted the earlier plea offer, (2) the prosecution would not have cancelled the plea, (3) the trial court would not have refused to accept the plea, and (4) the end result would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012).

Mr. Thomas accepted a plea offer and pleaded guilty in March 2010. Mr. Thomas claims that a letter from the prosecutor said that a plea deal expired in November 2009, so Mr. Thomas believes there was a plea agreement that wasn't disclosed to him. Mr. Thomas claims that his "attorney was in constant contact with the prosecutor via email, and there are signs in the emails that there was [a lot] of concern about this case going to trial or a plea deal." The government didn't confirm or deny Mr. Thomas's allegation that an earlier plea agreement was offered, arguing instead that Mr. Thomas didn't allege sufficient facts to meet the legal standard for deficient representation and prejudice. The court agrees. Aside from the allegation, Mr. Thomas has shown nothing to support his claim that the government offered a plea deal that wasn't disclosed to him. Mr. Thomas didn't provide the court with a copy of the letter or tell the court when the letter was written or to whom the letter was addressed; he didn't provide the court with a copy of the emails or any information about when or by whom the emails were written; and he didn't specify when he saw the letter or emails.

Mr. Thomas simply made a vague allegation that, if true, would constitute deficient performance on the part of his attorney; he hasn't offered the court any evidence to support his allegation. The vague allegation alone is too little to warrant a hearing on the matter or further inquiry by the court. Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001); *cf.* Paters v. United

States, 159 F.3d 1043, 1048 (7th Cir. 1998) (government factual concessions and affidavits of defendant's parents sufficient to warrant a hearing).

### D. Witness Interviews

Mr. Thomas next argues that his attorney provided ineffective assistance of counsel because he didn't call upon and inquire into the testimony of several witnesses. Mr. Thomas contends the witnesses would have testified to being present at Shawna Hill's home on the date of the shooting and that they didn't see Mr. Thomas with a gun. Jay Stevens represented Mr. Thomas during the plea negotiation process, so again, to show ineffective assistance of counsel, the defendant must show (1) that his attorney's performance fell below objective standards of reasonableness; and (2) that there is a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. Bethel v. United States, 458 F.3d 711, 716 (7th Cir. 2006). A defendant alleging ineffectiveness of counsel due to a lack of investigation must provide the court with specific information showing what the investigation would have produced. Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003).

Mr. Thomas claims Robert Jordan, Shawna Hill, and Lawrence Davis should have been called as witnesses to offer testimony favorable to his defense. Mr. Thomas contends that Shawna Hill didn't see Mr. Thomas with a gun and that she would have testified, as she did at the sentencing hearing, that after Mr. Thomas and Mr. Payne argued, Mr. Payne left the house through

the front and Mr. Thomas through the back. She then heard gun shots from the back. Mr. Thomas claims this testimony shows that Mr. Thomas didn't have a gun and contradicts Mr. Payne's version of the events. Mr. Thomas contends that Mr. Davis testified at the sentencing hearing that someone approached him, Mr. Thomas, and Mr. Jordan shooting, and Mr. Thomas didn't return fire. Mr. Thomas contends that Robert Jordan likely would have testified that he was with Mr. Thomas when a person in an SUV fired shots and Mr. Thomas was hit. Mr. Thomas doesn't provide an affidavit from Mr. Jordan containing this testimony, and Mr. Jordan didn't testify at the sentencing hearing. *See* United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Mr. Thomas submitted excerpts from a police report that contain a police officer's summary of the events as told to him by Mr. Jordan. The report's value is diminished, however, because the complete report is not included, the report doesn't identify Mr. Jordan by his full name until the last paragraph, the report doesn't indicate that either Mr. Jordan or the officer were under oath at the time either the statements or the report were made, and the report is Mr. Jordan's statement as interpreted by the police officer. Regardless, Mr. Thomas argues that the testimony of these witnesses would have corroborated Mr. Thomas's version of events and contradicted Mr. Payne's version of events.

Mr. Thomas contends that he would have gone to trial and not pleaded guilty had he known the witnesses were available. But in the § 2255 petition that he filed personally, Mr. Thomas stated, "I had been in contact with [the witnesses] to make sure they were ready to testify." Mr. Thomas also contends that his attorney lied to him about the witnesses' availability. Mr. Thomas continued, "[Jay Stevens] came back a week later and told me that he couldn't get in touch with [the witnesses]. . . . I called them after our meeting and they answered and told me that my lawyer was lying." Mr. Thomas claims that Jay Stevens "told me that I had no witnesses and that I should plead guilty because I couldn't win at trial without any witnesses." The record reflects, however, that on March 16, 2010, six days before Mr. Thomas pleaded guilty, Jay Stevens filed a petition for a writ of habeas corpus *ad testificandum* requesting that Robert Jordan be produced as a material witness for Mr. Thomas's trial. (Doc. No. 28). The court granted the writ two days later, so Mr. Jordan would have been available to testify at Mr. Thomas's trial. (Doc. No. 30). Even if Jay Stevens had not contacted Mr. Jordan directly, he ensured that Mr. Jordan would be available to testify on Mr. Thomas's behalf. Months earlier, in December 2009, Jay Stevens filed a motion to continue Mr. Thomas's trial due in part to technical playback issues with the recorded statements of the defendant and witnesses that he had received from the government. (Doc. No. 17). In October 2009, in a joint motion to continue the trial, Jay Stevens represented to the court that Mr. Thomas had provided him with the names of

witnesses that he believed to be material to the defense, but as of the date of the motion, he had been unable to serve subpoenas on those witnesses. (Doc. No. 13). The three motions suggest that Jay Stevens was investigating the witnesses in Mr. Thomas's case.

A strong presumption exists that counsel rendered adequate assistance and made significant decisions in the exercise of his reasonable professional judgment. Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). The court will "presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." Id. The record reflects that Jay Stevens was investigating witnesses and preparing for the presence of at least one, Mr. Jordan, at trial. Mr. Thomas has presented the court with no objective evidence, beyond his bare assertion, to support his claim that Jay Stevens lied to him about the availability of the witnesses. This allegation is also insufficient to warrant a hearing or further inquiry by the court. Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001).

### E. Evidence Disclosure

Mr. Thomas next alleges he received ineffective assistance of counsel because his attorney didn't disclose certain evidence to him before he pleaded guilty. Mr. Thomas contends Jay Stevens had exculpatory test results regarding gun-shot residue and DNA from the firearm. He claims Jay Stevens didn't disclose this evidence to him. Mr. Thomas also contends that Jay Stevens didn't disclose to him evidence that, after in camera review, the court

ordered disclosed to the defense. Lastly, Mr. Thomas claims that Jay Stevens authorized the destruction of the jacket he was wearing the night of the incident, which eliminated the possibility of any further tests being conducted on the jacket. Mr. Thomas claims all of this evidence could have influenced his decision to plead guilty.

These are serious allegations, but Mr. Thomas offers no objective evidence that his attorney didn't share this evidence with him. On December 1, 2009, Jay Stevens moved to continue Mr. Thomas's trial based in part on his determination that the testing of physical evidence was needed to prepare the defense. (Doc. No. 17). In that motion, Jay Stevens stated that he had contacted expert services and the tests wouldn't be completed before the end of January 2010. On February 2, 2010, Jay Stevens moved to continue Mr. Thomas's trial because the expert witness set to testify as to the forensic examination of Mr. Thomas's property wouldn't be available on the trial date. (Doc. No. 20). Mr. Thomas submitted a copy of the gunshot residue test result summary that was addressed to Jay Stevens and dated March 14, 2010, eight days before Mr. Thomas pleaded guilty.

Again, the court strongly presumes that counsel rendered adequate assistance and made significant decisions in the exercise of his reasonable professional judgment. Cooper v. United States, 378 F.3d at 641. The record reflects that Jay Stevens was preparing Mr. Thomas's defense by arranging for tests of physical evidence and for an expert to testify at his trial. Mr. Thomas

hasn't offered any proof of the allegation beyond his bare assertion that Jay Stevens didn't disclose evidence to him. This conclusory allegation is insufficient to warrant a hearing or further inquiry by the court. Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001) ("[A] hearing is not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'").

### F. Conclusion as to Jay Stevens

The court evaluates an attorney's overall performance to determine whether the attorney rendered adequate assistance. Raygoza v. Hulick, 474 F.3d 958, 963 (7th Cir. 2007). First, Jay Stevens encountered a conflict of interest during his representation of Mr. Thomas and immediately moved to withdraw and for substitute counsel to be appointed. Consequently, the conflict didn't adversely affect his performance or prejudice Mr. Thomas's defense. See Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). Second, Mr. Thomas claims that Jay Stevens poorly estimated the sentence that he ultimately received, but any sentencing estimate is based on speculation and dependent on a variety of factors, and the record reflects no evidence of bad faith on counsel's part. See United States v. Barnes, 83 F.3d at 940. Finally, Mr. Thomas alleges that Jay Stevens didn't disclose to him an earlier plea offer from the government, didn't interview witnesses, and didn't disclose exculpatory evidence to him. These vague and conclusory accusations lack enough for the court to investigate them further, and indeed, the record

frequently conflicts with Mr. Thomas's assertions. <u>Bruce v. United States</u>, 256 F.3d at 597; <u>Prewitt v. United States</u>, 83 F.3d 812, 819-820 (7th Cir. 1996). Altogether, Jay Stevens adequately represented Mr. Thomas during the negotiation of the plea agreement, and Mr. Thomas knowingly and voluntarily entered that agreement.

## II. Following the Guilty Plea

Mr. Thomas claims his second attorney, William Stevens, also was ineffective because he: (6) should have tried to withdraw Mr. Thomas's guilty plea due to his first attorney's conflict of interest and (7) was unprepared for the sentencing hearing. William Stevens's representation of Mr. Thomas began on May 10, 2010, after Mr. Thomas had pleaded guilty and Jay Stevens had withdrawn due to the conflict of interest. Paragraph 9(f) of the plea agreement contained the following waiver:

> I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255;

(Doc. No. 31). The court reviewed this provision with Mr. Thomas during the plea colloquy:

> The Court: Now, as I understand it, you're aware that people who are sentenced in federal court have the right to appeal their

-23-

sentence. But, as I understand it, as part of your plea agreement, you're giving up that right to appeal and also giving up the right to challenge your conviction or your sentence with a petition for post-conviction relief or a petition for writ of habeas corpus or any other motion challenging your sentence or your conviction.

Is that how you understand that?

Mr. Thomas: Yes, sir.

The Court: And let me spend another minute on that because this is an important provision.

As I understand it, that means that if from here on out I do anything with respect to your case that you don't think was right, or if Mr. Maciejczyk or anyone else from his office does anything with respect to the case that you don't think was right, or even if Mr. [Jay] Stevens in trying to represent you were to do anything with respect to the case that you didn't think was right, even if whatever went wrong means your sentence turned out to be longer than it should have, once we get to the sentencing hearing and I pronounce the sentence, you won't be able to complain about whatever went wrong to this court or any other court.

Is that how you understand that?

Mr. Thomas: Yes, sir.

(Doc. No. 75). The court further discussed the various rights Mr. Thomas would waive by pleading guilty.

A plea agreement that also waives the right to file a § 2255 motion is generally enforceable unless the waiver was involuntary, counsel was ineffective in negotiating the agreement, the sentence received was longer than the statutory maximum, or the court relied on a constitutionally impermissible factor such as race. Bridgeman v. United States, 229 F.3d 589, 591 (7th Cir. 2000); Jones v. United States, 167 F.3d 1142, 1144-1145 (7th Cir. 1999). As already discussed, Mr. Thomas was adequately represented by a different attorney during the negotiation of the plea agreement that included the waiver,

and he knowingly and voluntarily entered the plea agreement and the waiver. Mr. Thomas received the statutory maximum sentence for a violation of 18 U.S.C. § 922(g)(1), 120 months' imprisonment, pursuant to 18 U.S.C. § 924(a)(2), so his sentence didn't exceed the statutory maximum, and he doesn't allege that the court relied on a constitutionally impermissible factor. Mr. Thomas's waiver of his appeal rights is enforceable, and the waiver bars his claims against William Stevens, both of which are unrelated to the negotiation or voluntariness of the waiver.

## III. ALLEYNE V. UNITED STATES

Mr. Thomas filed a motion to amend his § 2255 motion in which he contends that whether he used a firearm in connection with other felony offenses was a fact issue that a jury, not the sentencing judge, should have decided. Mr. Thomas cites the Supreme Court decision Alleyne v. United States, 133 S.Ct. 2151 (2013), that overruled Harris v. United States, 536 U.S. 545 (2002), and held that "[a]ny fact that, by law, increases the penalty for a crime[, including a mandatory minimum sentence,] is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne v. United States, 133 S.Ct. at 2155. Harris had distinguished between facts that increase the statutory maximum, which a jury had to determine, and facts that increase the mandatory minimum, which the sentencing judge could decide. Alleyne v. United States, 133 S.Ct. at 2155. After Alleyne, facts that increase either the

-25-

statutory maximum or a statutory minimum can't be decided by the sentencing judge, but must be decided by a jury beyond a reasonable doubt. Alleyne v. United States, 133 S.Ct. at 2155.

Mr. Thomas contends that he didn't fire the gun and that a jury, and not the sentencing judge, should decide this factual dispute that enhanced his sentence. Mr. Thomas conceded that he possessed the gun, but claimed that he didn't fire it. The court found the government had provided sufficient evidence that Mr. Thomas committed battery and criminal recklessness under Indiana law in connection with his possession of the firearm. U.S.S.G. § 2K2.1(b)(6). The enhancement increased Mr. Thomas's offense level, which determined the applicable guideline range, but the enhancement didn't affect any statutory mandatory minimum sentence. The statute of conviction carried no minimum sentence. Mr. Thomas was sentenced to the statutory maximum sentence (120 months' imprisonment) that was below the lower end of the guideline range (151 months' imprisonment). Because the enhancement wasn't based on a fact that by law would increase the penalty for the crime, Alleyne doesn't require a jury to determine whether Mr. Thomas fired the gun.


IV. CONCLUSION

For all these reasons, Mr. Thomas isn't entitled to the relief he seeks in his motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The court DENIES his claims that Jay Stevens provided ineffective

assistance of counsel (Docs. No. 84 & 93), SUMMARILY DISMISSES his claims that William Stevens provided ineffective assistance of counsel, and DENIES his motion to amend the § 2255 petition (Doc. No. 104).

SO ORDERED.

ENTERED:  <u>September 20, 2013</u>


<u>      /s/ Robert L. Miller, Jr.      </u>
Judge
United States District Court