JERMEL C. THOMAS,                    )
                                     )
            PETITIONER,              )
                                     )
     VS.                             )            CAUSE NO. 3:12-CV-236 RM
                                     )            ARISING OUT OF: 3:09-CR-88 RM
UNITED STATES OF AMERICA,            )
                                     )
            RESPONDENT.              )


OPINION and ORDER

The court denied Jermel Thomas's claims that attorney H. Jay Stevens provided ineffective assistance of counsel in his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. His appeal of the court's judgment denying his § 2255 motion is before the court of appeals. Mr. Thomas filed a motion to supplement the record on appeal and a concurrent motion to re-open the court's judgment denying his § 2255 motion. While the appeal pends, the court can consider and deny the motion to re-open, but the court can't grant the motion. Chicago Downs Ass'n, Inc. v. Chase, 944 F.2d 366, 370 (7th Cir. 1991). The court invited the government to respond, which it did, and notified the court of appeals that the allegations in the motion to re-open the judgment were such that the court might be inclined to grant the motion. The court of appeals suspended briefing in the appeal pending resolution of these motions. After the time for a reply had expired, Mr. Thomas filed a motion for

extension of time to file a reply to the government's response. The briefing to date is sufficient for resolution of the issues.

## I. MOTION TO SUPPLEMENT

Mr. Thomas first moves the court to supplement the record on appeal pursuant to Federal Rule of Appellate Procedure 10(e)(2)(B), which allows the district court to correct or modify the appellate record when "anything material to either party is omitted from or misstated in the record by error or accident." The court can utilize Rule 10(e)(2)(B) to correct the record on appeal so that it reflects the record before the district court. "Courts should amend the record when it would ensure that the appellate record accurately reflects the record before the district court, not when the amendment would provide [the appellate] Court with new evidence not before the District Court, even if the new evidence is substantial." United States v. Cornell, 162 F. App'x 404, 413-414 (6th Cir. 2006). Mr. Thomas's motion presents evidence that wasn't before the court when the court decided his § 2255 motion, so the court DENIES Mr. Thomas's motion to supplement the record in order to introduce additional evidence.

## II. MOTION TO RE-OPEN THE JUDGMENT

Mr. Thomas also moves the court to re-open the court's judgment denying his 28 U.S.C. § 2255 motion pursuant to Federal Rule of Civil Procedure 60(b)(1) or 60(b)(6). The motion presents six exhibits, including copies of 2009 correspondence between the government and Mr. Thomas's first

counsel, Jay Stevens, and an affidavit from Teri Steinborn, a former paralegal for Mr. Thomas's second counsel, William J. Stevens. Mr. Thomas reports that the documents were in his sister's possession when he filed his § 2255 motion. The evidence directly relates to several arguments Mr. Thomas asserted in his § 2255 motion.

### A. Rule 60(b)

Federal Rule of Civil Procedure 60(b)(1) permits a court to relieve a party from a final judgment due to mistake, inadvertence, surprise, or excusable neglect. To determine whether the neglect is equitably excusable, the court should consider factors such as the prejudice to the other party, the length of the delay and the impact on judicial proceedings, and the reason for the delay – e.g., whether it was within the control of the movant. <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993). Rule 60(b)(2) authorizes a court to relieve a party from a final judgment (6) for any other reason that justifies relief. "[R]elief under Rule 60(b) is an extraordinary remedy reserved for the exceptional case." <u>Camp v. Gregory</u>, 67 F.3d 1286, 1290 (7th Cir. 1995).

Mr. Thomas says he referred to the evidence that he now seeks to introduce in his § 2255 motion, but he mistakenly didn't attach the documents to the motion because he was *pro-se,* the standard § 2255 form doesn't instruct petitioners to attach documents, and he didn't have access to the documents when he filed the motion. William Stevens, Mr. Thomas's second counsel, filed

the initial § 2255 motion. Mr. Thomas then filed a *pro se* supplement to the § 2255 motion that was on the standard § 2255 form. The court subsequently appointed a third attorney to represent Mr. Thomas and to file a § 2255 motion that presented the valid claims asserted by both motions. Mr. Thomas is mistaken when he says he filed his § 2255 motion *pro se*. Mr. Thomas explains that he forwarded all legal documents to his sister for safe-keeping during his incarceration, and his sister had possession of the pertinent documents when he filed his § 2255 motion. The government contends Mr. Thomas had control of the documents.

Although he might have had constructive possession of the documents through his sister, Mr. Thomas's motion to re-open the judgment doesn't present any new arguments or allege any new facts. The documents simply provide evidence that Mr. Thomas referred to in his § 2255 motion. Consequently, the government isn't prejudiced by defending against new allegations. Mr. Thomas filed the motion to re-open the judgment within a year of the court's decision. FED. R. CIV. P. 60(c)(1). His motion wasn't filed after an unreasonable amount of time – his appeal still pends. Mr. Thomas's mistake is excusable. Mr. Thomas isn't represented by counsel now, so the court will construe his motion to re-open the judgment liberally. Rutledge v. United States, 230 F.3d 1041, 1052 (7th Cir. 2000).

B. Withheld Plea Agreement

In his § 2255 motion, Mr. Thomas alleged that Jay Stevens, his first attorney, was ineffective because he didn't tell Mr. Thomas about a plea offer made before November 2009. Mr. Thomas claimed that a letter from the prosecutor said that a plea deal expired at that time and several emails between defense counsel and the prosecutor discussed whether the case would go to trial. To prevail on an ineffective assistance of counsel claim, a defendant must (1) demonstrate that counsel's performance fell below objective standards of reasonableness, and (2) show that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Yu Tian Li v. United States, 648 F.3d 524, 527 (7th Cir. 2011). If counsel doesn't tell his client about a plea offer, counsel's representation is deficient. Overstreet v. Wilson, 686 F.3d 404, 406 (7th Cir. 2012) (citing Missouri v. Frye, 132 S. Ct. 1399, 1408-1410 (2012)). The defendant must then establish prejudice because several things probably would have happened: (1) the defendant would have accepted the earlier plea offer, (2) the prosecution wouldn't have cancelled the plea offer, (3) the trial court wouldn't have refused to accept the plea, and (4) the end result would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012). The court concluded that aside from Mr. Thomas's allegations, he hadn't provided the court with anything to support his claim that his counsel didn't inform him of a plea offer, and the allegations alone weren't enough to warrant further inquiry from the court. *See* Bruce v. United

<u>States</u>, 256 F.3d 592, 597 (7th Cir. 2001) ("[A] hearing is not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'").

The motion to re-open the judgment includes copies of the correspondence already mentioned – emails dated September 15 and October 1 and a letter dated October 22 – from Assistant United States Attorney John Maciejczyk to Jay Stevens. The first email simply said, "I will send you a plea on this guy – trial is 10/13/09!" The second email stated:

> It looks like his level could be as high as 24, with prior drug offense, and used in connection with another felony offense, and his criminal history level is a cat V. So we are looking at about 70-87 months. Let me know asap if you don't think he'll plead because I don't have any subpoenas out for this one.

The second email also notes an attachment entitled "Thomas plea," and the letter includes the following sentence, "Finally, as we discussed, our plea offer will expire as of close of business November 30, 2009, unless we have a signed plea on file at that time." Mr. Thomas contends the correspondence shows that he had until November 29 to accept the plea being offered by the government, which included a sentence within the guideline range of 70-87 months. Mr. Thomas claims Jay Stevens predicted a ranged of 77-96 months, seven months higher than the government's offered range. He concludes that Jay Stevens influenced him to plead guilty to a higher range.

The government says in response that the text of the October 1 plea agreement was identical to the text of the plea agreement that Mr. Thomas

eventually signed, and the only differences between the two documents were limited to formatting, such as font and spacing. The government submits as an exhibit the plea agreement that was attached to the October 1 email, and the two plea agreements are indeed identical. According to the government, the subsequent joint and unopposed continuances of the trial date moved the plea offer expiration date forward.

Further, the government argues that Mr. Thomas mischaracterizes the sentence range mentioned in the October 1 email. The government maintains the plea was the standard type used by the United States Attorney's Office for the Northern District of Indiana that doesn't mention a guideline range and notes that no guideline range can be calculated in advance of sentencing. Regarding the possible sentence, section nine of both plea agreements stated,

> (c) I understand that the charge to which I now plead guilty carries the following penalties: Count 1: 18 U.S.C. § 922(g)(1) and 924(a)(2) Maximum Term of Imprisonment: 10 years . . . .
>
> (e) I understand that the U.S. Sentencing Guidelines are advisory only, and that the specific sentence to be imposed on me will be determined by the judge after a consideration of a pre-sentence investigation report, input from counsel for myself and the government, federal sentencing statutes, and the U.S. Sentencing Guidelines.
>
> (f) . . . . I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement . . . .

The court confirmed that Mr. Thomas understood these provisions during the plea colloquy. *See* Transcript of March 22, 2010 Guilty Plea Hearing, Doc. No.

75 in 3:09-CR-88. The plea agreement didn't contain an offer of 70-87 months or an offer of a specific number of months whatsoever.

The October 1 email also contradicts Mr. Thomas's claim: the government merely predicted ("we are looking at") a sentencing range of 70-87 months based on a level 24 offense with a criminal history level of category V. The court denied Mr. Thomas's comparable § 2255 motion claim that Jay Stevens didn't accurately predict his sentence. When the government makes a plea offer, a reasonably competent attorney will try to learn the facts of the case, make an estimate of a likely sentence, and communicate that analysis to the defendant. United States v. Barnes, 83 F.3d 934, 939 (7th Cir. 1996). "[T]he sentencing consequences of guilty pleas . . . are extraordinarily difficult to predict." Id. at 940. Jay Stevens apparently believed the sentencing range would be higher – along the lines of 77-96 months according to Mr. Thomas – than the government predicted. Also relevant to the final sentence is that the plea agreement contained a non-binding agreement that the government would recommend up to a three-level reduction for acceptance of responsibility, contingent upon Mr. Thomas continuing to accept responsibility. Mr. Thomas's testimony at the sentencing hearing led to his loss of any acceptance of responsibility reduction and an addition to his base offense level as a result of obstruction of justice.

Even if counsel didn't tell Mr. Thomas about an earlier plea agreement, Mr. Thomas still has to show that his defense was prejudiced by the action.

The substance of the subsequent plea agreement remained exactly the same. The correspondence doesn't reflect a missed opportunity for a more favorable end result from a plea to a lesser charge or a sentence of less prison time. Mr. Thomas hasn't presented any evidence that he was prejudiced by his attorney's alleged withholding of a prior plea agreement.

### C. Evidence Disclosure

In his § 2255 motion, Mr. Thomas alleged that he received ineffective assistance of counsel when his attorney didn't disclose certain evidence to him before he pleaded guilty. Mr. Thomas argued that Jay Stevens withheld evidence that the court reviewed and ordered disclosed to the defense, withheld exculpatory test results regarding gun-shot residue on the jacket he was wearing the night of the incident, and had the jacket destroyed. The court concluded that Mr. Thomas offered no objective evidence that his attorney didn't share this evidence with him and found that the record reflected Jay Stevens was preparing Mr. Thomas's defense by arranging for tests of the physical evidence and for an expert to testify at his trial.[1] Thus, relying on the strong presumption that counsel rendered adequate assistance, Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004), the court concluded the

_____

[1] On December 1, 2009, Jay Stevens moved to continue Mr. Thomas's trial based in part on his determination that the testing of physical evidence was needed to prepare the defense. In that motion, Jay Stevens stated that he had contacted expert services and the tests wouldn't be completed before the end of January 2010. On February 2, 2010, Jay Stevens moved to continue Mr. Thomas's trial because the expert witness set to testify as to the forensic examination of Mr. Thomas's property wouldn't be available on the trial date.

claim didn't warrant further inquiry by the court. *See* <u>Bruce v. United States</u>, 256 F.3d 592, 597 (7th Cir. 2001).

To support the motion to re-open the judgment, Mr. Thomas submits an affidavit of Teri Steinborn, a former paralegal for Mr. Thomas's second counsel, William Stevens. Ms. Steinborn alleges many things in her affidavit. The court addresses the five allegations that Mr. Thomas raises in his Rule 60(b) motion: (1) Jay Stevens withheld evidence from Mr. Thomas that the court had ordered disclosed to the defense; (2) the gun-shot residue report prepared by forensics expert John Nixon was negative; (3) Jay Stevens had Mr. Nixon destroy the remains of the jacket so the government couldn't test it and the results wouldn't be admitted into evidence; (4) Jay Stevens intentionally withheld Mr. Thomas's case file from counsel appointed to represent Mr. Thomas after Jay Stevens withdrew; and (5) Jay Stevens had a conflict of interest when he represented Mr. Thomas because his office partner represented a defendant who was also involved in the case.

Mr. Thomas argues that Ms. Steinborn's affidavit is objective evidence that unequivocally establishes that prior to his guilty plea, he had no knowledge of the substance of the in-camera motion, the gun-shot residue test results, or that his counsel had ordered the jacket destroyed so that no further tests could be done. Mr. Thomas concurrently argues that these three assertions are evidence that Jay Stevens acted against Mr. Thomas's interest due to a conflict of interest when he pleaded guilty.

First, Ms. Steinborn claims that Jay Stevens "started turning on" Mr. Thomas and was "already in the process of changing his tune" when he didn't tell Mr. Thomas about the court's March 10, 2010 order to disclose evidence to the defense that was submitted for in-camera review. On March 9, 2010, the government manually filed an in-camera submission and requested a ruling regarding the non-disclosure of a personnel matter. The following day, March 10, the court ordered the government to disclose the matter to the defense. The government claims, and the record reflects, that the court vacated the production order on March 22 at the change of plea hearing. *See* Doc. No. 32 in 3:09-CR-88 ("the order entered by this court on 3/10/2010 [Doc. No. 27] is hereby VACATED on government motion"). The government claims it didn't disclose the evidence to Jay Stevens before the order was vacated, so he couldn't have provided the information to Mr. Thomas. The court agrees. Jay Stevens couldn't withhold evidence from his client that wasn't disclosed to him.

Ms. Steinborn next claims the gun-shot residue report prepared by forensics expert John Nixon was negative. The government contends that the gun-shot residue report wasn't produced until September 19, 2010, well after Jay Stevens had withdrawn as counsel. Both parties are partially correct. The police declined to test Mr. Thomas's jacket for gun-shot residue, so Mr. Thomas's mother obtained the jacket from the police. Jay Stevens sent the jacket to Athena Research & Consulting LLC for testing. As the court noted in the order denying the § 2255 motion, Mr. Thomas submitted a copy of the gun-

shot residue test result summary with his reply. The report from John Nixon on Athena Research & Consulting LLC letterhead was addressed to Jay Stevens and dated March 14, 2010, eight days before Mr. Thomas pleaded guilty. Contrary to Ms. Steinborn's contention that the report was negative, the report concluded that the front of the jacket tested positive for nitrite residue, which is consistent with firearm ammunition propellant residue but may also come from a different source such as "marijuana smoke and some other substances." At best, the report was inconclusive. A later report, dated September 19, 2010, was entered into evidence, over the government's objection, at Mr. Thomas's sentencing hearing. The later report concluded that because nitrate residues were found on the front of the jacket, but not the sleeves, Mr. Thomas probably didn't fire a weapon while wearing the jacket.

Ms. Steinborn's affidavit doesn't explicitly state that Jay Stevens withheld the gun-shot residue report from Mr. Thomas as he suggests. That leaves things exactly where they were when the court rejected this contention in the order denying the § 2255 motion. *See* Opinion and Order Denying § 2255 Motion, p. 20-22, Doc. No. 105 in 3:09-CR-88.

Third, Ms. Steinborn asserts that Jay Stevens had Mr. Nixon destroy the remaining gun-shot residue reports and what was left of the jacket. Ms. Steinborn claims she confirmed the destruction with Mr. Nixon, who she says told her that not much was left after the tests. Ms. Steinborn surmised, "In [her] humble opinion, [that] this was done so that if it ever came up, the

government could never test it and therefore, it would 'probably' never be admitted into evidence." Steinborn Aff. p. 2. The government argues that her claims are mere speculation. Ms. Steinborn doesn't explain how she came to her conclusion. She doesn't claim to have spoken with Jay Stevens about his motivations, but instead claims that when William Stevens decided to use the report, the government challenged the defense's use of the report and the court agreed because the government didn't have the chance to have their expert test the jacket.

But the court didn't agree. At the sentencing hearing on September 20, William Stevens offered the September summary report into evidence, and the government objected to the report's admission. The court allowed the government to submit a brief addressing the admissibility of the report, and the government asserted several arguments: the report didn't set forth Mr. Nixon's qualifications to state an expert opinion, the defense hadn't produced the jacket, so it was impossible to verify that Mr. Nixon tested the right jacket, no chain of custody or preservation efforts had been shown, a different type of firearm was used in the testing, and the test didn't use electronic or microscopic aids to examine the jacket. Thus, several issues, well beyond the lack of any remaining pieces of the jacket, were identified.

At the subsequent sentencing hearing on October 21, the court overruled the government's objection because the rules of evidence don't apply to sentencing proceedings and the report didn't rise to the level of offending

principles of due process. Further, the September report had a critical conclusion that wasn't in the March report – that Mr. Thomas probably didn't fire a weapon. The record doesn't support Ms. Steinborn's theory regarding counsel's motivation for allegedly ordering the jacket destroyed. In any event, the alleged destruction didn't prejudice Mr. Thomas since the March report, which counsel allegedly withheld from him when he pleaded guilty, was inconclusive, and the court later overruled the government's objections and admitted the more favorable September report into evidence at the sentencing hearing.

Fourth, Ms. Steinborn alleges that Jay Stevens intentionally withheld Mr. Thomas's case file from his subsequent counsel, her employer at the time, William Stevens. She claims the later-obtained case file was "three times" larger than the original case file. Ms. Steinborn says she "told [William] Stevens that Jay Stevens had been withholding this information from us on purpose." Steinborn Aff. p. 2. Ms. Steinborn claims Jay Stevens told William Stevens that he would most likely find enough information in the files to file an appeal based on ineffective assistance of counsel, but says she wouldn't be surprised if William Stevens wouldn't do that to Jay Stevens because counsel later spoke to each other at a conference. The government argues that Ms. Steinborn's affidavit doesn't say she ever spoke directly to Jay Stevens about these matters, so her theories aren't based on personal knowledge. Her speculation, the

government argues, isn't enough to warrant a hearing on the matter. The court agrees.

No supporting facts accompany Ms. Steinborn's accusations about Jay Stevens's actions or inactions. That Ms. Steinborn told her boss about her theory isn't evidence that the theory is true. She doesn't explain how she learned what Jay Stevens allegedly told William Stevens – whether she overheard the conversation or it was relayed to her by one of the parties or a witness to the conversation. She implies that one attorney covered up another attorney's alleged mistakes because the two attorneys later amicably spoke at a meeting. The only evidence that she provides is that the later received case file was thicker and apparently contained more documents than the original file. But a delay in the transfer of the full case file doesn't imply malice on the part of prior counsel. While full of startling and unsupported accusations, Ms. Steinborn's affidavit doesn't establish that proof exists that counsel purposefully withheld the case file from subsequent counsel. Galbraith v. United States, 313 F.3d 1001, 1009-1010 (7th Cir. 2002); *see also* Barry v. United States, 528 F.2d 1094, 1101 (7th Cir. 1976) (hearing will be granted if the § 2255 petition is "accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions").

Finally, Ms. Steinborn alleges that Jay Stevens had a conflict of interest when he represented Mr. Thomas because Jay Stevens's office partner, Robert

Truitt, represented Lawrence Davis. She says she found it suspicious that Jay Stevens and Mr. Truitt filed their motions to withdraw on the same day, but reports that William Stevens didn't think it was a very big deal. Mr. Thomas alleged in his § 2255 motion that Jay Stevens had an inherent conflict of interest because he shared Federal Community Defender office space and staff with attorney Robert Truitt, and Mr. Truitt represented Lawrence Davis, who Mr. Thomas claimed shot him and was cooperating with the government.

Ms. Steinborn's affidavit merely adds that, in her opinion, the timing of the attorneys' withdrawal from representing Mr. Thomas and Mr. Davis – on the same day – is suspicious. The court can't agree. If the attorneys filed motions to withdraw on the same day, the actions are consistent with the facts presented to the court at the time that Jay Stevens moved to withdraw as Mr. Thomas's counsel. Jay Stevens stated, both in his motion to withdraw and at the related hearing,[2] that he moved to withdraw as counsel when he learned of the conflict of interest between Mr. Thomas and another client of the Federal Community Defender's Office. *See* Opinion and Order Denying § 2255 Motion, p. 5-6, Doc. No. 105 in 3:09-CR-88. Presumably, Mr. Truitt did the same. A defendant must show the actual conflict of interest influenced the attorney to

---

[2] Jay Stevens told the court: "[W]e represent two individuals in my office, and some information has come to light which could provide benefit to one at the expense of another. We only know about the fact that the information would be of benefit to one through attorney communications, and we only know that it would be a detriment to the other through attorney-client communications with the other, and so that puts us in a conflict situation where we would have to violate attorney-client communications in either event in order to zealously represent each individual." Motion to Withdraw Hearing Transcript, p. 2, Doc. No. 74 in 3:09-CR-88. Mr. Thomas was present at the hearing and expressed no objection to the motion. Id.

make "'basic strategic decisions' in a manner adverse to the defendant." <u>Taylor v. Grounds</u>, 721 F.3d 809, 818 (7th Cir. 2013). The conflict couldn't affect Jay Stevens's decisions or advice while he was unaware of the conflict, and nothing suggests that the conflict of interest adversely affected Jay Stevens' performance on behalf of Mr. Thomas.

Ms. Steinborn's affidavit is full of serious accusations that seem to be based on nothing more than conjecture. The affidavit isn't objective evidence that establishes any facts that support Mr. Thomas's claim that his attorney didn't disclose exculpatory evidence to him before he pleaded guilty. Again relying on the strong presumption that counsel rendered adequate assistance, <u>Cooper v. United States</u>, 378 F.3d 638, 641 (7th Cir. 2004), the court concludes the claim doesn't warrant further inquiry by the court. *See* <u>Bruce v. United States</u>, 256 F.3d 592, 597 (7th Cir. 2001).

### III. CONCLUSION

For the foregoing reasons, the court DENIES the motion to supplement the record (Doc. No. 116 in 3:09-CR-88; Doc. No. 15 in 3:12-CV-236), DENIES the motion to re-open the judgment (Doc. No. 115 in 3:09-CR-88; Doc. No. 14 in 3:12-CV-236), and DENIES the motion for extension of time to file a reply (Doc. No. 124 in 3:09-CR-88) as moot.

SO ORDERED.

ENTERED: <u>July 22, 2014</u>

/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　United States District Court


cc: Court of Appeals